PENDLETON and others *v.* STEAM-BOAT REUBEN POTTER.

*(Special District Court, D. Rhode Island.* ——, 1880.)

1. SALVAGE—AWARD—FUND IN REGISTRY.

In Admiralty.

*Wm. Sheffield,* for libellants.

KNOWLES, D. J.    This is a libel suit for salvage services, in which a decree of condemnation, on default and contumacy, was entered, October 8, 1879, under which decree the *res* was sold at public auction, on the twenty-fourth of October, for the sum of $700.    This sum was paid into the registry to abide the order of the court, and there it still remains, less the sum of $115.72, being the marshal's fees, paid to him on his petition, with the assent of the libellants, and of all other persons claiming an interest in the said fund.

No claimant or intervenor has made himself a party to the suit, but, by arrangement and agreement between the libellants and one Harris Pendleton, conceded to have been sole owner of the steamer libelled, he was permitted to appear and make defence against the allowance to the libellants of aught more than a nominal sum in compensation for their alleged salvage services.    Upon the question thus presented the parties have been fully heard, with their respective pleas, allegations, and evidence, and the court's judgment and determination thereupon I will proceed to state.    Of the facts substantiated by the evidence submitted by the parties respectively, only a few need be here stated in detail.    That evidence shows satisfactorily that the libellants' claim for salvage was well founded —in fact, indisputable; their proceedings throughout having been in consonance with the requirements of law, and the dictates of sound judgment and of nautical skill.    It showed, also, that, although the *res* might have been, as claimed, worth at least $2,100 when lying moored at Noack on the seventeenth or eighteenth of August, she brought, at a judicial sale in October, at which both the said Harris Pendleton and the libellants were present, only the said sum of $700.    And yet,

further, it showed that, to raise the *res* to the surface and put her in a condition to float in Newport harbor, the libellants, with the knowledge and tacit, if not expressed, assent of the authorized agent of the said Harris Pendleton, incurred a debt of $350 to a Captain Waters, a wrecker and diver of Newport, for which he holds them to be solely his debtors, they acknowledging their liability.

Now, that the libellants are entitled to recover this sum expended in caring for the *res* while in their charge and custody as salvors, must be conceded, while it follows that, after allowing this to be an indisputable claim against the fund, there still remains but $234.28 unappropriated, out of which to pay costs yet untaxed, estimated at $56.70, and whatever, if anything, shall be adjudged due the salvors in addition to the said sum of $350.

In view of these and of other facts in proof, I am of opinion that the libellants are entitled to an award of $125 for their salvage services, in addition to the said sum of $350 expended in the raising and repairing the *res*. A less sum would not be a reasonable compensation; a larger, considering of how little value the vessel proved to be after a necessary outlay of $350 upon her, would be out of reason. That the libellants may say that, could they have foreseen the result, they would have passed by on the other side, as did the Lereti, and left the crippled and helpless boat to the mercy of the wind and waves, is not improbable; and equally probable it is that the owner, Harris Pendleton, may say that better had it been for him had she gone to pieces with the dredge to which he prudently or imprudently made her fast at Noack on the eighteenth of August. But to querulous utterances like those, from whichsoever party, it seems sufficient to reply, that in the judgment of the court any other result would be unaccordant with sound precedents, and with the teachings of all approved text-writers on admiralty law and practice.